<u>AFFIDAVIT</u>

I, Michael J. Kelly, having been duly sworn, under oath depose and state that:

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been so employed since April, 1984. In that capacity, I investigate violations of Title 18 of the United States Code, including loansharking, and have participated in numerous investigations relating to loansharking, and other racketeering activities.

2. Based on my training and experience, I am aware that Title 18, United States Code, Section 894 makes it a federal offense to knowingly conspire to participate in any way in the use of any extortionate means to collect or attempt to collect any extension of credit. Having so stated, I make this affidavit in support of a complaint charging two individuals, namely **MICHAEL B. LEE**, a/k/a "Josh Wingenheimer"[1] and **DAVID GEFKE,** with conspiring to use extortionate means to collect or attempt to collect a debt.

3. The statements contained in this affidavit are based on my own investigation and on information provided to me by other

---

[1] Defendant MICHAEL LEE presently has a case pending before J. O'Toole, Cr. #09-10050. He is currently released on conditions set by Magistrate Judge Sorokin. The standard conditions of release include that the defendant not engage in any new criminal activity.

special agents of the FBI and officers of the Boston Police Department ("BPD"). This affidavit is submitted for the limited purpose of establishing probable cause to believe **MICHAEL B. LEE**, a/k/a "Josh Wingenheimer" and **DAVID GEFKE**," violated 18 U.S.C. §894. It therefore does not set forth all of the information that I and other law enforcement personnel have obtained during the course of this investigation.

4. On approximately January 31, 2010, an individual now known to the FBI, who will be referred to herein as John Doe[2], contacted BPD Detective Steven Blair and advised that three unknown individuals had come to his office and demanded money for a debt that he owed to another individual. On February 1 and 2, 2010, John Doe met with Detective Blair and FBI agents and provided further details.

5. John Doe is the owner of a real estate company in Boston, According to John Doe, he owed approximately $90,000 to defendant DAVID GEFKE in connection with a 2007-2008 real estate renovation of a condominium unit located at 263 Commonwealth Avenue, Boston. John Doe owed this money to defendant GEFKE, who

---

[2]John Doe is known to the FBI, having previously been charged and convicted in the mid-1990's of engaging in monetary transactions in property derived from specified unlawful activity. The conviction was later reversed on appeal. John Doe was also convicted in the 1980's on federal drug trafficking charges.

purported to have obtained $90,000 from an unknown investor in Boca Raton, Florida. GEFKE is a real estate broker and manages East Springfield LLC. John Doe has had recent financial difficulties with his business and was having trouble paying the entire debt. In January 2010, GEFKE filed a lawsuit against John Doe in an attempt to get his money back. An agreement between John Doe's attorney and GEFKE was negotiated but broke down over an indemnification request.

6. On January 28, 2010, John Doe received a telephone call from an individual who identified himself as "Josh Wingenheimer." Wingenheimer advised John Doe that he was looking to purchase some property in the Back Bay for approximately $1,000,000. The two agreed to meet the following day.

7. On January 29, 2010, at approximately 11:30 am, three unknown "thugs" walked into the reception area of John Doe's office. One of the "thugs" identified himself as "Josh Wingenheimer" and said "Clearly, I'm not here to buy a condo." All three men went into John Doe's office. Wingenheimer sat in the chair and the other two men stood at the closed door with their arms crossed. Wingenheimer stated "you owe an awful lot of money on the street. You owe GEFKE, and now you owe me."

Wingenheimer told John Doe that he wanted this to "go as simple as possible. I don't want to interrupt your life at The Four Seasons or your daughter at Boston College.[3] If I need to find your Bentley, I will. I want $10,000 now and I want another $10,000 later." John Doe told Wingenheimer that he did not have the money. It was apparent to John Doe that the men were not going to leave empty handed. John Doe then wrote a $1,000 check payable to "E. Springfield LLC" (defendant GEFKE's company) and gave it to Wingenheimer. John Doe told Wingenheimer that he would call him later when he had another check for him. Later that day, John Doe received a text message from Wingenheimer that stated, "Punctuality is everything."

8. Later that day, John Doe left a second check in the amount of $1,000 payable to "E. Springfield LLC" at his office for Wingenheimer. When John Doe returned to his office, the check was gone.

9. On January 30, 2010, John Doe sent a text message to GEFKE asking him to contact him. John Doe did not receive a reply. Later that day, John Doe received a text message from Wingenheimer instructing John Doe not to contact GEFKE.

---

[3]John Doe currently resides at The Four Seasons and drives a Bentley.

-4-

Wingenheimer texted John Doe, "You don't owe him the money anymore, you owe me $58,000."

10. On February 1, 2010, John Doe received a voice message from Wingenheimer which stated, "The funds are not available for the checks you gave me. Call me back before 1 p.m. or I can come to your office or your house down on the Cape." John Doe responded with a text message to Wingenheimer that stated "Have David (GEFKE) deposit the checks. They will be honored with overdraft protection." That same day, John Doe's secretary called John Doe and stated that Wingenheimer was with her at John Doe's office. Wingenheimer took the telephone and asked John Doe where he was and stated that he wanted to see him. Wingenheimer then added, "You have a lot of people working for you. You work for me now." John Doe agreed to meet Wingenheimer but Wingenheimer did not show up for the meeting. Another meeting was scheduled for later that evening.

11. Also on February 1, 2010, John Doe's wife called John Doe to let him know that she had received a telephone call from "Josh." Josh told John Doe's wife that there was a big problem at the office and John Doe should call him.

12. At approximately 7:30 p.m. that evening, John Doe received a text message from Wingenheimer which stated that he was eating at The Bristol Lounge (the restaurant inside The Four Seasons). The message went on to say that "I know you're not upstairs, so call me." John Doe sent a message to Wingenheimer stating "a couple of minutes" and Wingenheimer texted back that he was at the bar. When John Doe pulled up to the valet at The Four Seasons, he recognized two of the men standing outside as the two "thugs" who had first visited his office with Wingenheimer on January 29, 2010. John Doe went into the Bristol Lounge and met with Wingenheimer. Wingenheimer was upset because he stated that he had called the bank and they told him that there was not enough money to cover the checks. Wingenheimer then demanded John Doe's Mont Blanc watch, which according to John Doe states is valued at four or five thousand dollars. Wingenheimer stated that he would give the watch back if the checks cleared. Wingenheimer told John Doe that he wanted this whole thing to "go easy" and John Doe should continue to give him money. Wingenheimer told John Doe that he wanted $10,000 by Friday. John Doe stated that he did not have the money. Wingenheimer stated that he knew that John Doe had an expensive

-6-

watch collection which included a Rolex Presidential, a Rolex Yachtmaster and a Brietling. Wingenheimer stated that John Doe should give him the entire watch collection and they would call it even. Wingenheimer added that the debt was now $60,000 and wanted to know what time they could meet the next day so he could get the watches and take them to his jeweler. John Doe agreed to get some watches together for the next day. Sometime during the meeting, John Doe was making hand gestures, and Wingenheimer told John Doe that "Next time you put your hands up to me, I'll knock you out." After Wingenheimer left, the bartender asked John Doe how he knew "Mike." The bartender told John Doe that "Mike is bad news. He is a drug dealer and has killed some people."

    13. Unbeknownst to Wingenheimer, BPD Detective Blair was present at the Bristol Lounge during the meeting and observed Wingenheimer and the two "thugs" outside of The Four Seasons. Detective Blair identified "Josh Wingenheimer" as defendant MICHAEL LEE. Detective Blair also recognized the two "thugs" standing outside The Four Seasons. Detective Blair observed John Doe sitting at a dinner table at The Bristol Lounge with defendant LEE and an unknown white male. Detective Blair also observed John Doe pass an unknown object to defendant LEE.

14. Video surveillance from The Bristol Lounge/Four Seasons shows defendant MICHAEL LEE and an unknown male individual walking.

15. On February 2, 2010, John Doe's wife received another telephone call from a person who asked to speak with "Kevin." John Doe's wife recognized the voice as that of Wingenheimer.[4] The caller said he was sorry and that he had called the wrong number.

16. On February 3, 2010, John Doe and Wingenheimer met at Starbucks on Charles Street in Boston. John Doe gave Wingenheimer three additional watches. John Doe described the watches as valued at approximately $17,000.

17. On February 4, 2010, John Doe agreed to cooperate with the FBI, and consensually record conversations with both of the defendants. At this meeting, John Doe appeared, to this affiant, to be visibly shaken and concerned for the safety of his family and his business reputation. John Doe was especially concerned that his personal information had become known to defendant LEE. The recorded conversations corroborate that defendants LEE and

---

[4] Defendant MICHAEL LEE, a/k/a "Josh Wingenheimer" is an Irish National who speaks with an Irish brogue.

-8-

GEFKE are attempting to collect a debt from John Doe. There are several consensually recorded conversations with John Doe and defendants LEE and GEFKE wherein they discussed the collection of the debt. John Doe is heard to repeatedly ask GEFKE "Who is that guy?" and "Why did you send leg breakers to see me?" GEFKE tells John Doe that once John Doe "pays the $56,000, it ends." GEFKE tells John Doe that he did not want to go down this far but is himself "in a little bit of a jam." GEFKE tells John Doe that "somebody sent him (LEE) to me to get my issue cleared up." GEFKE tells John Doe that "people in the state police" are telling LEE information about John Doe. In one conversation, LEE and John Doe discuss meeting the next day and LEE instructs John Doe "not to show up with his hands empty." GEFKE also texted John Doe that "I got your message. I had no other choices."

18. On February 1, 2010, BPD showed John Doe a photo line-up of several males. John Doe identified defendant MICHAEL LEE as the individual known to him as the suspect involved in this investigation. A photograph of defendant GEFKE was shown to John Doe. John Doe recognized defendant GEFKE as the individual known to him as David Gefke who he has done business with.

-9-

19. Based on the foregoing, I submit that there is probable cause to believe that defendants MICHAEL LEE and DAVID GEFKE did conspire to, and did attempt to collect and did collect, using extortionate means, an extension of credit, in violation of Title 18, United States Code, Section 894.

_____
MICHAEL J. KELLY
Special Agent, FBI

Sworn and subscribed to before me this 5th day of February, 2010.

_____
TIMOTHY S. HILLMAN
U.S. Magistrate Judge